[No. 42191-3-I.   Division One.   May 24, 1999.]
THE STATE OF WASHINGTON, *Respondent*, v. GERALD A.
PRAY, *Appellant*.

*Stella Susan Buder* of *Washington Appellate Project*, for
appellant.

*David S. McEachran, Prosecuting Attorney*, and *Laura
D. Hayes*, and *Macduffie Setter, Deputies*, for respondent.

PER CURIAM — Gerald Pray, a convicted sex offender, is required to register with the county sheriff each time he changes his residence. He abandoned his home in King County and lived in three temporary residences in Bellingham for approximately 10 days. During that time, he failed to register with the Whatcom County Sheriff, and was convicted of failing to register. He appeals his conviction, claiming that he did not establish a "residence" in Whatcom County and therefore was not required to register. We find there was sufficient evidence that Pray established a residence in Bellingham and therefore had a duty to register with the sheriff. We also find that the court's failure to enter findings of fact and conclusions of law until after Pray filed his opening brief on appeal does not warrant remand. Accordingly, we affirm the judgment and sentence.

## Facts

Gerald Pray was convicted of rape of a child in the second degree, RCW 9A.44.076. He served 66 months in prison, and was released on or about September 19, 1997. He registered with the King County Sheriff as required by RCW 9A.44.130(1).[1] On November 3, 1997, Pray told Seattle community corrections officer (CCO) Eris Peterson that he had moved out of his Seattle residence and wanted to look for a job and an apartment in Bellingham. CCO Peterson issued him a travel permit good through November 9, and later extended it through November 24. Pray contacted

---

[1] At the time of the offense, RCW 9A.44.130(1) provided:

> Any adult or juvenile residing in this state who has been found to have committed or has been convicted of any sex offense or kidnapping offense, or who has been found not guilty by reason of insanity under chapter 10.77 RCW of committing any sex offense or kidnapping offense, shall register with the county sheriff for the county of the person's residence.

Amendments to this subsection which do not affect the outcome of this case took effect on June 11, 1998.

CCO Peterson nearly every day, and continued to seek employment and a suitable permanent residence while he was in Bellingham.

Pray stayed with a friend upon his arrival in Bellingham. CCO Peterson deemed the friend's residence to be inappropriate because she had a 14-year-old daughter living at home, and Pray was not allowed to have unsupervised contact with minors. On November 5, Pray met with Bellingham CCO Margie Flink and he remained in daily contact with her while he was in Bellingham. He informed CCO Flink that he had moved to the Villa Inn on or about November 5. On November 10, he informed her that he had moved to another motel, the Lion's Inn.

Although CCO Flink and CCO Peterson reminded Pray of his duty to register with each change of address, and although he acknowledged that he had that duty, Pray failed to register with the sheriff while he was at any of his three residences in Bellingham. Instead, he falsely assured CCO Flink that he had in fact registered at the first two addresses. On November 13, he was arrested for failure to register pursuant to RCW 9A.44.130(7).[2] He was released from custody on November 14, and returned to Seattle. He later found a suitable permanent residence in Bellingham. He moved to that address and registered with the Whatcom County Sheriff on November 24, 1997.

Pray waived his right to a jury trial. He was convicted on February 2, 1998 of failure to register as sex offender. He

---

[2] At the time of offense, RCW 9A.44.130(7) provided:

> A person who knowingly fails to register or who moves without notifying the county sheriff as required by this section is guilty of a class C felony if the crime for which the individual was convicted was a class A felony or a federal or out-of-state conviction for an offense that under the laws of this state would be a class A felony. If the crime was other than a class A felony or a federal or out-of-state conviction for an offense that under the laws of this state would be a class A felony, violation of this section is a gross misdemeanor.

This subsection has been amended in ways that do not affect the outcome of this case. The amended version took effect June 11, 1998 and is now found in RCW 9A.44.130(9).

was sentenced to serve 10 days in jail. He received credit for one day served, and the remaining nine days were converted to community service. Pray appealed his conviction. The court did not enter its findings of fact and conclusions of law until November 13, 1998, after Pray had filed his opening brief. Pray moved to supplement his assignments of error on April 28, 1999 by assigning error to some of the findings of fact and conclusions of law, but asserted no new arguments.

## Discussion
### Registration Requirement

■■■■ As a convicted sex offender, Pray must register his address with the sheriff of his county of residence. RCW 9A.44.130(1). If Pray moves to a new county, he must register with the sheriff of the new county within 24 hours of changing his residence. RCW 9A.44.130(4)(a).[3] If he knowingly fails to register or moves without notifying the sheriff, he is guilty of failing to register under RCW 9A.44.130(7). Pray acknowledges that he has a duty to register under RCW 9A.44.130(1). He argues, however, that he did not "move" to Bellingham and therefore had no duty to register with the Whatcom County Sheriff.

The purpose of the sex offender registration statute is to assist law enforcement agencies' efforts to protect their communities against reoffense by convicted sex offenders. LAWS OF 1990, ch. 3, § 401. Registration provides law en-

---

[3]At the time of offense, RCW 9A.44.130(4)(a) provided:

> If any person required to register pursuant to this section changes his or her residence address within the same county, the person must send written notice of the change of address to the county sheriff at least fourteen days before moving. If any person required to register pursuant to this section moves to a new county, the person must send written notice of the change of address at least fourteen days before moving to the county sheriff in the new county of residence and must register with that county sheriff within twenty-four hours of moving.

This subsection has been amended in ways that do not affect the outcome of this case. The amended version took effect June 11, 1998, and is now found in RCW 9A.44.130(5)(a).

forcement agencies with an address where they can contact a sex offender.

RCW 9A.44.130 does not define "residence." In the absence of a specific statutory definition, words in a statute are given their ordinary meaning. *See State v. Alvarez*, 128 Wn.2d 1, 11, 904 P.2d 754 (1995). A nontechnical word may be given its dictionary meaning. *State v. Fjermestad*, 114 Wn.2d 828, 835, 791 P.2d 897 (1990). WEBSTER'S DICTIONARY defines "residence" as:

> **1 a** the act or fact of abiding or dwelling in a place for some time . . . **2 a** (1) the place where one actually lives . . . (2) a *temporary* or permanent dwelling place, abode or habitation *to which one intends to return* as distinguished from a place of temporary sojourn or transient visit.

WEBSTER'S THIRD INTERNATIONAL DICTIONARY 1931 (1993) (emphasis added). Under this definition, even a temporary dwelling may be considered a "residence."

BLACK'S LAW DICTIONARY defines "residence" as:

> Personal presence at some place of abode with no present intention of definite and early removal and with purpose to remain for undetermined period . . . but not necessarily combined with design to stay permanently.

BLACK'S LAW DICTIONARY at 1308-09 (6th ed. 1990).

In *State v. Pickett*, 95 Wn. App. 475, 975 P.2d 584 (1999), the court found that a homeless convicted sex offender did not have a "residence" and therefore could not register his address with the sheriff. In that case, the sex offender did not know where he would sleep each night and thus he could not give the sheriff an address where he could be contacted. In contrast, on any given day between November 3 and November 13, Pray knew the place he would sleep that night, even though that place changed several times during that period. At each place he stayed in Bellingham, he intended to return to that place and did not plan to leave on any definite date. Rather, he intended to stay in each place for an undetermined period, that is, until he found a permanent residence.

Pray argues that only a "permanent" residence arrangement triggers the registration requirement. We disagree. Under the definitions above, a temporary habitation may be a residence. Pray abandoned his residence in Seattle, and had indefinite though temporary living arrangements. Based on the evidence, a rational trier of fact could find that Pray established a "residence" in Bellingham, and thus was required to register with the Whatcom County Sheriff.

## Failure to Enter Findings of Fact

■ The court entered its CrR 6.1(d) findings of fact and conclusions of law on November 13, 1998, approximately one month after Pray filed his opening brief. In his brief, Pray alleges that without the written findings, this court cannot determine whether there was sufficient evidence to support his conviction. *State v. Denison*, 78 Wn. App. 566, 571, 897 P.2d 437 (1995). In the absence of written findings, he asks for remand to allow the trial court to enter the findings of fact and conclusions of law. Five months after the trial court entered its findings, Pray moved to supplement his assignments of error.[4] We find that the issues raised by his additional assignments of error were fully addressed in his opening brief, and thus they do not change our decision.

The purpose of entering findings is to enable an appellate court to review the issues raised on appeal. *State v. McGary*, 37 Wn. App. 856, 861, 683 P.2d 1125 (1984). "[F]indings and conclusions may be submitted and entered even while an appeal is pending." *Id.* The belated filing of findings, although disfavored, does not constitute error so long as the defendant is not prejudiced thereby and the

---

[4]The State attached a copy of the findings to its response brief filed January 25, 1999, and indicated they would be designated as clerk's papers. Months later, and only at this court's direction, the State designated the findings as clerk's papers to be considered by this court. Only then did Pray file his motion to supplement his assignments of error. Pray had notice of the findings no later than January 25, 1999, so his delay in supplementing the assignments of error is unexplained. Nevertheless, we grant his motion so as to reach the merits.

State does not tailor the findings to meet the issues raised by the appellant in his opening brief. *State v. Cannon*, 130 Wn.2d 313, 329-30, 922 P.2d 1293 (1996). Pray does not argue that he was prejudiced by the belated filing, nor is there any evidence that the State tailored the findings after Pray's opening brief was filed. Therefore, there is no error. *See McGary*, 37 Wn. App. at 861.

We affirm.

Review denied at 139 Wn.2d 1010 (1999).