IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON | ) | No. 71416-3-I |
| Respondent, | ) ) | |
| | ) | DIVISION ONE |
| v. | ) ) | UNPUBLISHED OPINION |
| CLAYTON DANIEL GERLACH, | ) ) | |
| Appellant. | ) | FILED: May 4, 2015 |

TRICKEY, J. — Clayton Gerlach appeals from the judgment and sentence following a bench trial. He argues that the evidence was insufficient to sustain his conviction of residential burglary and that he was prejudiced by the trial court's entry of delayed findings of fact and conclusions of law. We disagree and affirm the conviction.

FACTS

On October 27, 2011, Mark Conner was returning to his residence in Arlington, Washington at approximately 10 a.m. after stopping at a nearby restaurant. As he was approaching his house, he noticed a white sports utility vehicle (SUV) pull into his driveway. The SUV was parked on Conner's property about halfway between the house and the entrance to the driveway. Conner parked his vehicle in the driveway and approached the driver sitting inside the white SUV. Conner noticed that the driver had short black hair and was wearing a black leather coat over a white T-shirt. Conner asked the driver if he needed help. The driver told Conner that he was having engine problems, after which he honked the horn to his vehicle. At that point, Conner became suspicious and said he was going to call 911.

When Conner left his house that morning, he had turned the lights off, locked the front door and the screen door. But when he entered the house to call 911, he observed that a light was on inside, the screen door was open, and the front door was unlocked. Conner also discovered that many items had been displaced and the house was in disarray. Conner had not given permission to anyone to enter his home.

Conner ran outside. He planned to obstruct the SUV in the driveway, but the SUV swiftly pulled out of the driveway once he emerged outside. Conner noticed a pink trailer hitch attached to the vehicle.

The driver of the SUV honked the horn once again. As Conner was calling 911, he saw a man scurry across his front yard and into some bushes. The man entered the SUV, which immediately sped off down the street.

Conner provided descriptions of the vehicle and the driver to the police. Shortly thereafter, Snohomish County Police Officer Thomas Morris observed Clayton Gerlach walking on the side of a road located between one and two miles from Conner's house. According to Officer Morris, it was dangerous to walk on that road, and was very unusual to see pedestrians there. Officer Morris observed that Gerlach's face was red, as if he had been exerting himself. Nevertheless, Officer Morris did not stop Gerlach but continued to search for the vehicle Conner had described—a white SUV with a pink trailer hitch. He soon found the vehicle parked approximately 200 yards from where he had seen Gerlach walking. The SUV was parked at an angle and there were skid marks on the grass, as if the vehicle had skidded to a stop. The SUV was still warm, indicating that the vehicle

had been recently driven. Based on these observations, it appeared to Officer Morris that the vehicle had been abruptly stopped or "ditched" by the driver who wanted to flee the vehicle.[1] As soon as he saw the vehicle, Officer Morris alerted other responding officers of the vehicle and the suspect and requested that they stop and detain Gerlach.

Officer Kenneth Thomas stopped Gerlach on the side of the road. Officer Thomas noticed Gerlach was walking at a heightened pace and was not wearing a jacket despite the cold weather. Gerlach was perspiring and breathing heavily. When Officer Thomas asked Gerlach where he was coming from, Gerlach was unable to answer. Gerlach said he was from Everett, but could not explain why he was in the area that day.

Conner subsequently identified the SUV by its color and style, from an item hanging from the rearview mirror, and from the distinctive pink trailer hitch on the rear of the vehicle. Conner then identified Gerlach as the man he encountered in the driveway.

A K-9 officer arrived to the scene. The dog followed a scent trail from Gerlach's vehicle to the location where Gerlach was detained, about one half mile from the SUV. However, the K-9 officer was unable to locate the second suspect.

The State charged Gerlach with one count of residential burglary and one count of bail jumping. Gerlach stipulated to a bench trial on agreed documentary evidence on the bail jumping charge. He waived his right to a jury trial on the residential burglary charge.

---

[1] Report of Proceedings (RP) (11/18/2013) at 70.

A bench trial took place in November 2013. The State called Conner as a witness, along with several of the investigating officers. Gerlach testified that he was in Arlington on the day in question to apply for a job. He said that he ended up in Conner's neighborhood because he once had friends who lived in that neighborhood. He testified that he took a wrong turn in that neighborhood. According to Gerlach, he was experiencing car trouble that day so he pulled into Conner's driveway. He left when Conner began appearing suspicious of him. Afterwards, Gerlach testified that he got lost and pulled over on the road because the engine failed.

At the conclusion of the trial, the trial court found Gerlach guilty on both charges. The trial court entered findings of fact and conclusions of law as to the residential burglary conviction on September 3, 2014, and supplemental findings on October 7, 2014.[2]

Gerlach appeals.

## ANALYSIS

### Sufficiency of the Evidence

Gerlach contends that insufficient evidence supported the trial court's guilty verdict. This is so, he asserts, because the State did not establish that he was the principal or accomplice in the crime. We disagree.

The due process clauses of the federal and state constitutions require that the State prove every element of a crime beyond a reasonable doubt. Apprendi v. New Jersey, 530 U.S. 466, 476-77, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000);

---

[2] The trial court entered separate findings of fact and conclusions of law with regard to the bail jumping charge.

U.S. CONST. amend. XIV; WASH. CONST. art. I, § 3. "[T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be . . . to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 318, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319.

By challenging the sufficiency of the State's evidence, Gerlach admits the truth of the State's evidence and all reasonable inferences from that evidence. State v. Kintz, 169 Wn.2d 537, 551, 238 P.3d 470 (2010). Circumstantial evidence and direct evidence can be equally reliable. State v. Delmarter, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). We defer to the fact finder on questions of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. State v. Killingsworth, 166 Wn. App. 283, 287, 269 P.3d 1064 (2012).

The State charged Gerlach with residential burglary in violation of RCW 9A.52.025. To find Gerlach guilty of residential burglary, the State was required to prove that, "with intent to commit a crime against a person or property therein, [Gerlach or an accomplice] enter[ed] or remain[ed] unlawfully in a dwelling other than a vehicle." RCW 9A.52.025.

Under Washington's complicity statute, an individual is guilty of a crime committed by another if he or she "is an accomplice of such other person in the commission of the crime." RCW 9A.08.020(2)(c). A person is an accomplice if,

with knowledge that it will promote or facilitate the commission of the crime, he encourages or aids another in committing it. RCW 9A.08.020(3)(a)(i) and (ii). "The word 'aid' means all assistance whether given by words, acts, encouragement, support, or presence." 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 10.51, at 217 (3d ed. 2008). Intent may be inferred where the circumstances indicate such intent as a matter of logical probability. State v. Johnson, 159 Wn. App. 766, 774, 247 P.3d 11 (2011). Specific knowledge of each element of the principal's crime need not be proved to convict a person as an accomplice. State v. Roberts, 142 Wn.2d 471, 513, 14 P.3d 713 (2000); State v. Rice, 102 Wn.2d 120, 125, 683 P.2d 199 (1984). General knowledge of the crime is sufficient to support a finding of accomplice liability. Roberts, 142 Wn.2d at 513.

Gerlach contends that insufficient evidence supported that he was an accomplice in the burglary because, he asserts, there was no evidence that he had the intent to commit the crime or that he had knowledge that his actions would aid the commission of the crime. He maintains that the only evidence implicating him was his presence at the scene of the crime. In support of this contention, Gerlach cites to State v. Truong, where we noted:

> Mere presence of the defendant without aiding the principal—despite knowledge of the ongoing criminal activity—is not sufficient to establish accomplice liability. Rather, the State must prove that the defendant was ready to assist the principal in the crime and that he shared in the criminal intent of the principal, thus "demonstrating a community of unlawful purpose at the time the act was committed."

168 Wn. App. 529, 540, 277 P.3d 74 (2012) (internal citations omitted).

The State proved that Gerlach had the intent to commit the burglary and was ready to aid. Gerlach was not "merely present" at the scene of the crime.

6

The evidence shows that Gerlach honked the horn once Conner confronted him on his driveway. Gerlach honked the horn a second time when Conner returned outside after discovering his residence had been burglarized. From these facts, one could reasonably infer that Gerlach was attempting to alert the suspect of Conner's presence. Furthermore, Conner testified that the other suspect entered Gerlach's vehicle and the two men immediately fled the scene.

A rational trier of fact could find beyond a reasonable doubt that Gerlach committed the crime of residential burglary as an accomplice.

Belated Findings and Conclusions

Gerlach next contends that he was prejudiced by the trial court's belated entry of findings of facts and conclusions of law. We disagree.

Gerlach filed his opening brief on July 7, 2014, challenging the sufficiency of the evidence and asserting that the trial court failed to enter findings of facts and conclusions of law. On September 3, 2014, the trial court entered findings of fact and conclusions of law. The trial court found Gerlach guilty of residential burglary and entered the following facts:

1. That on or about the 27th day of October 2011;
2. The Defendant, Clayton Gerlach;
3. Did enter or remain unlawfully in a dwelling with the intent to commit a crime of theft;
4. That the defendant acted as an accomplice by assisting and aiding another party in the commission of this crime; and
5. That the acts occurred in Snohomish County Washington.[3]

The trial court entered supplemental findings of fact and conclusions of law on October 7, 2014. In the trial court's supplemental findings, the court found that

---

[3] Clerk's Papers (CP) at 98.

7

Gerlach "knew that the unknown person had entered the residence without permission to steal property inside the residence," and that Gerlach "intended to aid and facilitate the unknown person's commission of the crime of residential burglary."[4] The trial court also found not credible Gerlach's "explanation for his behavior, including his reason for being in the area and horn honking."[5] The trial court concluded that Gerlach was guilty beyond a reasonable doubt as an accomplice of the crime.

On October 16, 2014, the State asked this court to grant permission pursuant to RAP 7.2(e) for the trial court to formally enter its findings of fact and conclusions of law and supplemental findings. On October 31, 2014, we granted this request. Gerlach filed his appellant's reply brief and supplemental assignment of error on December 5, 2014.

CrR 6.1(d) requires the trial court to enter written findings of fact and conclusions of law at the conclusion of a bench trial. State v. Head, 136 Wn.2d 619, 621-22, 964 P.2d 1187 (1998). This enables an appellate court to review the questions raised on appeal. Head, 136 Wn.2d at 622. The proper remedy for failure to comply with CrR 6.1(d) is remand for entry of written findings of fact and conclusions of law. Head, 136 Wn.2d at 624. Reversal is only appropriate where the defendant has established actual prejudice. Head, 136 Wn.2d at 624. Although the practice of submitting late findings of fact and conclusions of law is disfavored, findings and conclusions may be submitted and entered even while an

---

[4] CP at 96.
[5] CP at 96.

8

appeal is pending if the defendant is not prejudiced by the belated entry of findings. State v. McGary, 37 Wn. App. 856, 861, 683 P.2d 1125 (1984).

"We will not infer prejudice . . . from delay in entry of written findings of fact and conclusions of law." Head, 136 Wn.2d at 625. Rather, "a defendant might be able to show prejudice resulting from the lack of written findings and conclusions where there is strong indication that findings ultimately entered have been 'tailored' to meet issues raised on appeal." Head, 136 Wn.2d at 624-25.

Gerlach argues that he was prejudiced by the belated findings because the findings were tailored to his argument on appeal. He points to the trial court's oral ruling in which the court did not recite any facts to support its conclusion that he was guilty of residential burglary:

> I have had a chance to review my notes as well as all the exhibits that were admitted in this case, and I am ready to make my decision.
> So, in this matter I find Mr. Gerlach guilty of the charge. I've already found him guilty of the bail jumping charge, but I find him guilty of the charge of residential burglary.[6]

Gerlach relies on the well settled principle in Washington that a defendant is not prejudiced by a trial court's delayed findings if the findings track its oral decision. State v. Cannon, 130 Wn.2d 313, 329-30, 922 P.2d 1293 (1996); State v. Ritter, 149 Wn. App. 105, 108-9, 201 P.3d 1086 (2009); State v. Portomene, 79 Wn. App. 863, 905 P.2d 1234 (1995)). However, Gerlach has failed to identify any legal authority establishing that belated written findings following a trial court's incomplete oral decision results in prejudice.

---

[6] Report of Proceedings (11/26/2013) at 2.

Indeed, the trial court's decision did not change when it entered the findings of fact and conclusions of law. At trial, the State's theory of the case was that Gerlach was an accomplice to the burglary by acting as a lookout and the get-away driver. Defense counsel argued that Gerlach was encountering car trouble and therefore was merely present as an innocent bystander to the crime.[7] Based on these opposing theories, the trial court was required to make a credibility determination. Its oral ruling finding Gerlach guilty demonstrates that the trial court did not believe Gerlach's testimony that he was innocently present in the neighborhood; otherwise, the trial court would have acquitted Gerlach. In the trial court's supplemental findings, it determined that "[t]he defendant's explanation for his behavior, including his reason for being in the area and the horn honking was not credible."[8] The findings did not deviate from the court's original oral decision. A comparison of the trial court's findings of fact and Gerlach's briefing on appeal reveals no strong indication that the findings were tailored to the issue raised by Gerlach on appeal.

Affirmed.

Trickey, J.

WE CONCUR:

---

[7] RP (11/18/2013) at 127.
[8] CP at 96.

10